[Cite as *State v. Allen*, 2011-Ohio-4821.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 96014**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JONAS ALLEN

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-512245

**BEFORE:** Cooney, J., Jones, P.J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:** September 22, 2011

**ATTORNEY FOR APPELLANT**

Thomas A. Rein
Leader Building, Suite 940
526 Superior Avenue
Cleveland, Ohio 44114


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

By: Edward H. Kraus
Assistant County Prosecutor
9th Floor, Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

COLLEEN CONWAY COONEY, J.:

{¶ 1} Defendant-appellant, Jonas Allen ("Allen"), appeals his convictions for tampering with records, telecommunications fraud, and securing records by deception. Finding no merit to the appeal, we affirm.

{¶ 2} In July 2008, Allen was indicted on five counts of tampering with records (Counts 1, 3, 4, 7, and 9), three counts of theft (Counts 2, 6, and 8), one count of telecommunications fraud (Count 5), and one count of securing records by deception (Count

10).   At the conclusion of the State's case in Allen's jury trial, the court granted Allen's Rule 29 motion as to one count of theft (Count 2), but denied his motion on the remaining counts.

{¶ 3}   In September 2010, the jury found Allen guilty of Counts 1, 3, 5, 7, 9, and 10, and not guilty of Counts 4, 6, and 8.   Allen was sentenced to two months' incarceration on Count 10, followed by two years of community control sanction for the remaining counts.

{¶ 4}   Allen now appeals, raising three assignments of error.

<u>Sufficiency and Manifest Weight of the Evidence</u>

{¶ 5}   In his first assignment of error, Allen argues that his convictions are not supported by sufficient evidence.   In his second assignment of error, he argues that his convictions are against the manifest weight of the evidence.   These two assignments are related to the same set of facts and will therefore be discussed together.

{¶ 6}   In *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶113, the Ohio Supreme Court explained the standard for sufficiency of the evidence:

> "Raising the question of whether the evidence is legally sufficient to support the jury verdict as a matter of law invokes a due process concern.   *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541.   In reviewing such a challenge, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'   *State v. Jenks* (1991), 574 N.E.2d 492, paragraph two of the syllabus, following *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560."

{¶ 7}  In a sufficiency review, however, this court does not make determinations of credibility. Rather, the court decides, based on the evidence presented if believed, whether any rational trier of fact could have found the defendant guilty of the crimes charged.

{¶ 8}  Although the test for sufficiency requires a determination of whether the prosecution has met its burden of production at trial, a manifest weight challenge questions whether the prosecution has met its burden of persuasion.  *Thompkins* at 390.  When considering a manifest weight claim, a reviewing court must examine the entire record, weigh the evidence, and consider the credibility of witnesses.  *State v. Thomas* (1982), 70 Ohio St.2d 79, 80, 434 N.E.2d 1356.  The court may reverse the judgment of conviction if it appears that the factfinder "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"  *Thompkins* at 387, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.

{¶ 9}  A judgment should be reversed as against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387.

{¶ 10} Allen was convicted of four counts of tampering with records, under R.C. 2913.42(A)(1), which states:

{¶ 11} "No person, knowing the person has no privilege to do so, and with purpose to defraud or knowing that the person is facilitating a fraud, shall do any of the following:

[f]alsify, destroy, remove, conceal, alter, deface, or mutilate any writing, computer software, data, or record[.]"

{¶ 12} Allen was convicted of one count of telecommunications fraud, under R.C. 2913.05(A), which states:

{¶ 13} "No person, having devised a scheme to defraud, shall knowingly disseminate, transmit, or cause to be disseminated or transmitted by means of a wire, radio, satellite, telecommunication, telecommunications device, or telecommunications service any writing, data, sign, signal, picture, sound, or image with purpose to execute or otherwise further the scheme to defraud."

{¶ 14} Finally, Allen was convicted of one count of securing records by deception, under R.C. 2913.43(A), which states:

{¶ 15} "No person, by deception, shall cause another to execute any writing that disposes of or encumbers property, or by which a pecuniary obligation is incurred."

{¶ 16} The following evidence was adduced at trial.

{¶ 17} Allen, a mortgage broker, was employed by Automated Transfer Mortgage from 2002-2008.

{¶ 18} In 2005, Allen pursued a property through a sheriff's auction. This property was a single-family home in Solon, Ohio ("Solon home"), that had been foreclosed upon due to the prior owner's inability to maintain the mortgage. Although Allen's sister, Sonya Allen

("Sonya"), had no intention of living in the home, Allen filled out the loan application for a mortgage on the home in her name.[1]

{¶ 19} Sonya lived in a home on Alhambra Road in Cleveland ("Cleveland home"). In order to secure the mortgage, Allen fraudulently filled out a mortgage application (Form 1003) with a false income amount[2] and faxed it to NLC Financial Services, the mortgage holder. Allen also created a false affidavit in which he stipulated that Sonya would occupy the Solon home and rent the Cleveland home to a friend of Allen's named Darren Sweeney. Sonya testified that she never rented her Cleveland home to Sweeney.

{¶ 20} Sonya admitted signing the mortgage application but claimed that she did not fill out the form herself, nor did she review the contents. Allen "took care of the whole thing" for her. After securing the mortgage, Sonya did not move into the Solon home. Instead, Allen rented the home to David Turner ("Turner") and Celeste Lee ("Lee"). Under the false impression that they were leasing the home with an option to buy, Turner and Lee paid Allen a down payment of $10,000 and monthly rent of $2,000. Instead of using this income to pay the mortgage, Allen allowed the mortgage to default and enter foreclosure — in Sonya's name.

---

[1] Sonya was also indicted for these crimes. She pled guilty to two misdemeanors and agreed to testify against her brother.

[2] The application listed Sonya's income as $69,000, as opposed to the $15,000 indicated on

{¶ 21} Sonya discovered that the home was in foreclosure and demanded that her brother remedy the situation. While Turner and Lee were still leasing and occupying the Solon home, Allen sold it to Deborah Pankuch ("Pankuch"). Pankuch testified that she originally contacted Allen in hopes that he could help improve her credit score by investing in property. He convinced her that purchasing the Solon home was a good investment. She trusted Allen and allowed him to handle all of the paperwork regarding her purchase of the Solon home. Although Pankuch admitted signing the mortgage application, she claimed that she did not review the contents of the form. Once again, Allen secured this sale by using a false income amount on the mortgage application (Form 1003). Without the means to pay the mortgage with her actual income, the mortgage defaulted and entered foreclosure, this time in Pankuch's name.

{¶ 22} Allen testified at trial and argued that he had secured the Solon home for his sister in an attempt to help her and her children live in a neighborhood with better schools. Allen denied any wrongdoing on his part.

{¶ 23} Solon police lieutenant Chris Viland ("Viland") testified regarding this particular fraud, as well as the dozens of others he had seen in recent years. He testified that all of the documents faxed to the mortgage companies had Allen's fax number on them.

___
her W2 form.

Viland testified about the false information contained in the mortgage applications, the affidavit, and the HUD down-payment form. He testified that, from his experience, Sonya and Pankuch were "straw" buyers, meaning false buyers who participated in the fraud. He testified that the totality of the documents and circumstances involved in the instant case led him to believe that Allen had committed mortgage fraud.

{¶ 24} After viewing the evidence in a light most favorable to the prosecution, we find sufficient evidence to establish, beyond a reasonable doubt, that Allen committed tampering with records, telecommunications fraud, and securing records by deception. Moreover, based on the aforementioned facts and circumstances, we find that the conviction is not against the manifest weight of the evidence. We cannot say that the jury lost its way and created a manifest injustice in convicting Allen.

{¶ 25} Accordingly, Allen's first and second assignments of error are overruled.

## Expert Witness

{¶ 26} In his third assignment of error, Allen argues that he was denied his right to a fair trial when the trial court allowed expert testimony from a witness who was not qualified as an expert.

{¶ 27} Allen argues that the testimony of Steve Newcomb ("Newcomb"), an employee of the parent company of Argent Mortgage Company, denied him of his right to a fair trial.

{¶ 28} However, Newcomb was never determined by the trial court to be an expert. The trial court had full discretion to allow Newcomb to testify despite not being deemed an expert, because he was the representative of one of the companies involved in the mortgage fraud. Evid.R. 701, opinion testimony by lay witnesses, states:

{¶ 29} "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

{¶ 30} In fact, when Allen's trial counsel objected to Newcomb's testimony as being an expert opinion on a subject he was not directly involved in, the trial court sustained the objection. The court struck a portion of Newcomb's testimony regarding his opinion of the fraud perpetrated by Allen on another mortgage company. The trial court gave the following curative instruction to the jury:

{¶ 31} "Yesterday Mr. Newcomb gave his opinion as to some activities that he believed was fraud. I'm going to ask you to disregard his testimony as to that. I want you to disregard testimony about the first NLC loan and the 1003 form involved in that transaction. That information will be stricken from the record."

{¶ 32} A jury is presumed to follow the instructions, including curative instructions, given by a trial judge. *State v. Charley*, Cuyahoga App. No. 82944, 2004-Ohio-3463, ¶51,

citing *State v. Loza*, 71 Ohio St.3d 61, 75, 1994-Ohio-409. Allen offers no evidence that the jury did not abide by the judge's instruction. Moreover, Allen's counsel did not object to these instructions when they were given nor does Allen challenge the clarity of these instructions on appeal. Accordingly, he has waived all but plain error. *Puckett v. United States* (2009), 556 U.S. 129, 129 S.Ct. 1423, 173 L.Ed.2d 266.

{¶ 33} Without any evidence to the contrary, we presume that the jury followed the judge's curative instruction. Thus, we find no error regarding Newcomb's testimony.

{¶ 34} Accordingly, Allen's third assignment of error is overruled.

Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
COLLEEN CONWAY COONEY, JUDGE

LARRY A. JONES, P.J., and
EILEEN A. GALLAGHER, J., CONCUR